USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___5/31/20___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rachel Ward, | |
| Plaintiff, | |
| —v— | 19-cv-930 (AJN) |
| Cultural Care, Inc., *et al.*, | OPINION & ORDER |
| Defendants. | |

ALISON J. NATHAN, District Judge

Plaintiff Rachel Ward initiated this action against Defendants Cultural Care, Inc. and Sarah Briggs, a Cultural Care employee at all relevant times. Plaintiff seeks damages for Defendants' alleged violations of the Americans with Disabilities Act, Rehabilitation Act, New York State Human Rights Law, and New York City Human Rights Law, as well as for Defendants' alleged negligence. Before the Court is Defendants' motion to dismiss or, in the alternative, to transfer Plaintiff's claims to the United States District Court for the District of Massachusetts. For the reasons stated below, the Court GRANTS Defendants' motion to transfer and orders this case TRANSFERRED to the District of Massachusetts.

I.      **BACKGROUND**[1]

Plaintiff is a New York City resident who contracted with Defendant Cultural Care, Inc.

---

[1] In resolving a motion to transfer, the Court assumes allegations in the Complaint to be true but may also look to evidence outside of the Complaint. *See Androb Jewelry Serv., Inc. v. Malca-Amit USA, LLC*, No. 16-cv-5171 (AJN), 2017 WL 4712422, at *1 n.1 (S.D.N.Y. Sept. 25, 2017).

to provide au pair services.  Compl. (Dkt. No. 1) ¶¶ 3, 5, 10–11.  Defendant Sarah Briggs was, during all times relevant to the claims asserted in the Complaint, the head of the au pair program at Cultural Care.  *Id.* ¶ 6.  Plaintiff hired Eliara Quesia Ribeiro Rosa Dos Santos, an au pair, through Cultural Care.  *Id.* ¶¶ 12–13.  On May 5, 2017, Eliara began working for Plaintiff.  *Id.* ¶ 15.  In December 2017, Cultural Care contacted Plaintiff to inquire whether she was interested in extending Eliara's contract in advance of its expiration in May 2018.  *Id.* ¶ 16.  Plaintiff discussed extending her contract with Eliara and subsequently registered for an additional 12-month term.  *Id.* ¶¶ 17–18; *see* Dkt. No. 21-3.  The contract entered into between Plaintiff and Cultural Care on January 19, 2018 extending Eliara's term includes a choice of law and forum selection clause.  Dkt. No. 21-3 ¶ 3.  This clause provides:

> This Agreement shall be governed by the laws of the Commonwealth of Massachusetts, without regard to the conflict of law principles in Massachusetts or any other jurisdiction.  In the event of any claim, dispute or proceeding arising out of the relationship of the Host Family and CC, or any claim whether in contract, tort, or otherwise, or at law or in equity that arises between the parties, whether or not related to this agreement, the parties hereby submit and consent to the exclusive jurisdiction and venue of the courts of the Commonwealth of Massachusetts and of the United States District Court for the District of Massachusetts.

*Id.*

On February 16, 2018, Plaintiff's son was diagnosed with Type I diabetes.  Compl. ¶ 19. Thereafter, Eliara began to assist Plaintiff with her son's care.  *Id.* ¶ 21.  At a May 7, 2018 meeting between Plaintiff, her husband, Eliara, and a Cultural Care representative, Eliara indicated that she did not feel comfortable with some responsibilities pertaining to the care of Plaintiff's son, and the Cultural Care representative indicated that Eliara should be given some time to reconsider whether she wished to continue on with Plaintiff.  *Id.* ¶¶ 34–35, 42–43.  On May 14, 2018, Eliara advised Plaintiff's family that she did not wish to extend her time with

them.  *Id.* ¶ 45.  On a May 16, 2018 phone call with Defendant Briggs, Plaintiff explained to Briggs that she was anxious and eager to find another au pair.  *Id.* ¶ 49.  At that time, Defendants indicated that they needed more information on Plaintiff's son's Type I diabetes and more time to consider whether to continue to provide au pair services to Plaintiff.  *Id.* ¶¶ 49–51.  On May 17, 2020, Defendants indicated that because of Plaintiff's son's Type I diabetes, Plaintiff was being asked to leave the au pair program.  *Id.* ¶ 53.  Defendants informed Plaintiff that she would receive a partial refund contingent upon her signing a waiver of any and all claims against Defendants.  *Id.* ¶ 55.  Eliara ceased working for Plaintiff on June 1, 2018, and Plaintiff's family has been without childcare since.  *Id.* ¶ 56.

On January 30, 2019, Plaintiff brought suit against Defendants, alleging disability discrimination in violation of the ADA, Section 504 of the Rehabilitation Act, the New York State Human Rights Law, and the New York City Human Rights Law, as well as negligence. Compl.  On March 7, 2019, Defendants filed a motion to dismiss the Complaint or, in the alternative, to transfer this action to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).  Dkt. No. 9.  Plaintiff filed her opposition to Defendants' motion on March 28, 2019, Dkt. No. 21, and Defendants filed their reply on April 4, 2019, Dkt. No. 22.

## II.   DISCUSSION

Defendants argue that the forum selection clause in the contract entered into between Plaintiff and Cultural Care on January 19, 2018 is valid and enforceable, and thus this action should be dismissed or, in the alternative, transferred to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).  For the reasons that follow, the Court GRANTS Defendants' motion to

transfer and orders this case TRANSFERRED to the District of Massachusetts.[2]

## A.    Legal Standard

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  *See also N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).  Ordinarily, in determining whether to transfer a case, a court considers the following non-exhaustive set of factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Id.* (internal quotation marks and citation omitted); *see also Children's Network, LLC v. PixFusion LLC,* 722 F. Supp. 2d 404, 409 (S.D.N.Y. 2010) (stating that a court may also weigh "trial efficiency and the interest of justice, based on the totality of the circumstances" (internal quotation marks omitted)).  If a court determines that a mandatory forum-selection clause

---

[2] Because the Court concludes that this case should be transferred to the District of Massachusetts, it need not consider Defendants' alternate request that the case be dismissed pursuant to the doctrine of *forum non conveniens*. However, the Court notes "[d]ismissal under *forum non conveniens* is improper when another federal forum is available, because 'the federal venue transfer statute, 28 U.S.C. § 1404(a), has superseded the common law doctrine of *forum non conveniens* unless the alternative forum is abroad.'" *Allstate Prop. & Cas. Ins. Co. v. Titeflex Corp.*, No. 3:14-cv-945 (MPS), 2015 WL 1825918, at *2 (D. Conn. Apr. 22, 2015) (quoting *Frisof v. Swift Transp. Co.*, No. 08-cv-00554 (NGG), 2008 WL 4773059, at *1 (E.D.N.Y. Oct. 30, 2008)); *see also Guardian Life Ins. Co. of Am. v. Hernandez*, No. 11-cv-2114 (SAS), 2011 WL 3678134, at *2 (S.D.N.Y. Aug. 22, 2011) ("[Section 1404(a)] has superseded the common law doctrine of *forum non conveniens*, which is now appropriate only in 'cases where the alternative forum is abroad.'"; *Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 849 (S.D.N.Y. 2017) (applying only § 1404(a) where a forum selection clause allowed suit to be brought in either a federal or state court, and where the party sought, in the alternative, a transfer to a federal court or a *forum non conveniens* dismissal).

governs the claims in a given action, however, this calculus changes.  Although the court must

still determine if transfer is warranted under § 1404(a), "a proper application of [that statute]

requires that a forum-selection clause be given controlling weight in all but the most exceptional

cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 571 U.S. 49, 59–60 (2013)

(internal quotation marks omitted).

The Supreme Court instructs that the following "adjustments" should be made to the

"§ 1404(a) analysis when [a] transfer motion is premised on a forum-selection clause." *Id.* at

581.  First, "the plaintiff's choice of forum merits no weight," *id.*, and "the plaintiff must bear the

burden of showing why the court should not transfer the case to the forum to which the parties

agreed," *id.* at 582.  Second, the Court "should not consider arguments about the parties' private

interests," because "[w]hen parties agree to a forum-selection clause, they waive the right to

challenge the preselected forum as inconvenient or less convenient for themselves or their

witnesses, or for their pursuit of the litigation." *Id.*  Accordingly, the Court may only consider

arguments relating to the public-interest factors.  Third, "when a party bound by a forum-

selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a)

transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in

some circumstances may affect public-interest considerations." *Id.*

Because the analysis the Court must employ hinges on the presence or absence of a

forum selection clause, the Court first considers whether the forum selection clause in the

parties' January 19, 2018 agreement is valid and enforceable.

### B.    The Forum Selection Clause is Valid and Enforceable

"Where, as here, a contract contains both a choice-of-law and a choice-of-forum clause,

the overriding framework governing the effect of forum selection clauses in federal courts is

drawn from federal law, rather than the body of law specified in the choice-of-law clause."

*Zeppelin Sys. USA, Inc. v. Pyrolyx USA Indiana, LLC*, No. 19-cv-11222 (CM), 2020 WL

1082774, at *3 (S.D.N.Y. Mar. 5, 2020) (citing *Martinez v. Bloomberg LP*, 740 F.3d 211, 217

(2d Cir. 2014)).  Under Second Circuit law, courts apply a four-part framework to determine the

validity and enforceability of a forum selection clause.  They consider "(1) 'whether the clause

was reasonably communicated to the party resisting enforcement'; (2) whether the clause is

'mandatory or permissive, i.e., . . . whether the parties are required to bring any dispute to the

designated forum or [are] simply *permitted* to do so'; and (3) 'whether the claims and parties

involved in the suit are subject to the forum selection clause.'"  *Martinez*, 740 F.3d at 217

(quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).  "If the forum clause

was communicated to the resisting party, has mandatory force and covers the claims and parties

involved in the dispute, it is presumptively enforceable."  *Phillips*, 494 F.3d at 383.  This

presumption can be overcome only by "(4) 'making a sufficiently strong showing that

enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as

fraud or overreaching.'"  *Martinez*, 740 F.3d at 217 (quoting *Phillips*, 494 F.3d at 383–84).

Courts apply federal law to part four of this analysis—whether "an otherwise mandatory and

applicable forum clause is *enforceable*"—and "the law contractually selected by the parties" to

the "*interpretive* questions posed by parts two and three."  *Id.* at 217–18.

        Applying the first three parts of this four-part framework, the Court concludes that the

forum-selection clause at issue here is presumptively enforceable.  First, the clause was clearly

communicated to Plaintiff when she signed the January 19, 2018 agreement.  *See* Dkt. No. 21-3

¶ 3.  Second, the forum selection clause is mandatory.  As discussed above, the Court applies

Massachusetts law—the law contractually selected by the parties—to this interpretive question.

*See id.* ("This Agreement shall be governed by the laws of the Commonwealth of

Massachusetts.").  Under Massachusetts law, a forum-selection clause is mandatory where it

"contain[s] clear language indicating that jurisdiction and venue are appropriate exclusively in

the designated forum."  *Boland v. George S. May Int'l Co.*, 81 Mass. App. Ct. 817, 824 (2012)

(quoting *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 17 (1st Cir. 2009)).  By its

terms, the clause at issue clearly provides that jurisdiction and venue lie exclusively in the state

and federal courts of Massachusetts.  *See* Dkt. No. 21-3 ¶ 3 ("[T]he parties hereby submit and

consent to the *exclusive jurisdiction and venue* of the courts of the Commonwealth of

Massachusetts and of the United States District Court for the District of Massachusetts."

(emphasis added)).

Third, the claims and parties involved in this suit are subject to the forum-selection

clause.  The Court again applies Massachusetts law to the third part of the four-part framework.

The forum-selection clause applies to "any claim, dispute or proceeding arising out of the

relationship of the Host Family and CC, or any claim whether in contract, tort, or otherwise, or at

law or in equity that arises between the parties, whether or not related to this agreement."  *Id.*

Each claim asserted in the Complaint arises out of the relationship between Plaintiff—a member

of the Host Family—and Cultural Care and is thus subject to the forum selection clause.  *See*

Compl. ¶¶ 59–97.  Furthermore, Plaintiff and Cultural Care are subject to the forum-selection

clause; Cultural Care is expressly named in the clause, and Plaintiff is a member of the Host

Family, which is also so named.  *See* Dkt. No. 21-3 ¶ 3.  Defendant Briggs is also subject to the

clause because, as a Cultural Care employee at all times relevant to this suit, she was "sufficiently closely related" to Cultural Care, such that it was "foreseeable" that she would be subject to the forum-selection clause. *See Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 577 (2013), *aff'd*, 478 Mass. 169 (2017) (noting that though there is not Massachusetts case law clearly on point, it is "generally accepted" that "nonsignatory third parties can be bound [by a forum selection clause] where the nonparty is sufficiently closely related to a signatory that it is foreseeable that the nonsignatory will be bound").

Thus, because the forum-selection clause was "communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Phillips*, 494 F.3d at 383.

The Court next considers whether Plaintiff has overcome this presumption. A presumptively enforceable forum-selection clause "should be invalidated only when the resisting party satisfies the 'heavy burden' of showing that 'it would be unfair, unjust, or unreasonable to hold that party to his bargain.'" *Martinez*, 740 F.3d at 219 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Under part four of the four-part framework articulated above, courts in the Second Circuit examine four factors in determining whether a forum selection clause is invalid. This Court will not enforce the presumptively enforceable forum selection clause in the parties' January 19, 2018 agreement if: "'(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum' in which suit is brought; 'or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.'" *Martinez*, 740 F.3d at 228 (quoting *Bremen*, 407 U.S. at

392).

Plaintiff does not argue that the forum-selection clause's incorporation in the January 19, 2018 agreement was the result of fraud or overreaching, nor does she argue that the law to be applied in the selected forum is fundamentally unfair.  Accordingly, the Court considers only whether Plaintiff has satisfied her heavy burden of showing that enforcement contravenes a strong public policy of the forum in which suit is brought or the selected forum will be so difficult and inconvenient that she effectively will be deprived of her day in court—and concludes that she has not.

First, Plaintiff fails to demonstrate that enforcement of the forum-selection clause contravenes a strong public policy of the forum in which suit was brought.  Second Circuit caselaw suggests that the enforcement of a forum-selection clause may be against the public policy of the forum in which suit was brought where the remedies provided by law in the foreign forum are so insufficient or inadequate that the public policy of the forum in which suit was brought would be offended by application of the foreign law.  *See id.* at 228–29.  Plaintiff cannot argue that the transfer of this case to the District of Massachusetts would be against public policy because the *same* remedies that are available in this Court would be available to her there. Indeed, the District of Massachusetts regularly enforces the ADA and the Rehabilitation Act, and, even if Plaintiff is correct that New York law applies to the other claims in this action—an issue the Court need not and does not decide here—the District of Massachusetts is as capable of applying New York state and local law to those claims as this federal Court is.

Second, Plaintiff fails to demonstrate that litigating this case in the District of Massachusetts would be so difficult and inconvenient that she would effectively be deprived of

9

her day in court.  Plaintiff argues that she and any witnesses reside in New York and thus would

be inconvenienced by traveling to Massachusetts—a mere two states away—to litigate this case.

*See* Dkt. No. 21-1 at 8.  However, this is not the kind of inconvenience this factor contemplates;

indeed, Plaintiff makes no showing—let alone a "sufficiently strong" showing—that she would

effectively be deprived of her day in Court were her case transferred to the District of

Massachusetts.  Accordingly, she has failed to satisfy her heavy burden on this factor.

Because Plaintiff has failed to overcome the presumption of enforceability of the forum

selection clause in the parties' January 19, 2018 agreement, the Court concludes that this clause

is valid and enforceable.

### C.      Transfer is Warranted Under § 1404(a)

Having concluded that a mandatory forum-selection clause governs the claims in this

action, the Court applies § 1404(a) with the adjustments discussed above.  Plaintiff must bear the

burden of showing that public-interest factors—the only factors the Court considers where a

transfer motion is premised on a valid and enforceable forum selection clause—

"overwhelmingly disfavor a transfer."  *Atl. Marine*, 571 U.S. at 67.  Public interest factors may

include "the administrative difficulties flowing from court congestion; the local interest in having

localized controversies decided at home; [and] the interest in having the trial of a diversity case

in a forum that is at home with the law."  *Id.* at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454

U.S. 235, 241 n.6 (1981)).  The "forum-selection clause [should] be given controlling weight in

all but the most exceptional cases."  *Id.* at 60.

Plaintiff has failed to meet her burden of showing that this is a most exceptional case in

which public-interest factors overwhelmingly disfavor transfer.  Indeed, she makes no argument

regarding court congestion and cannot argue that there is any interest in trying this case in a forum that is at home with the law where, as here, jurisdiction is not premised on diversity. Plaintiff does argue that her case presents a localized controversy that should be decided locally, but even were she correct that the controversy between the parties is, indeed, local—a questionable assertion in light of the fact that both Defendants are located outside New York— this factor, standing alone, would not *overwhelmingly* disfavor transfer.

Because Plaintiff has failed to meet her burden, the Court gives controlling weight to the forum-selection clause in its § 1404(a) analysis and orders this case transferred to the District of Massachusetts—the forum to which the parties agreed.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion to transfer this case is GRANTED.  The Clerk of Court is respectfully directed to transfer this case to the District of Massachusetts.

SO ORDERED.

Dated: May 31, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge

11